2-15-10-2203 Illinois, Mr. Katlin is the unaccompanied defendant's appellant. Arguing on behalf of the defendant's appellant, Mr. Richard S. Longin, arguing on behalf of the defendant's appellant, Mr. Ronald Christopher White. On behalf of the plaintiff's appellate, Mr. Richard S. Longin, arguing on behalf of the defendant's appellant, Mr. Ronald Christopher White. Yes, thank you. Mr. White. You may proceed. Okay, good morning. Let me just say one thing. Okay. I have a cold, so I apologize in advance if I have a coughing fit. Okay, okay. May I produce a court counsel? I'm Chris White on behalf of the defendant, Deonte Green, from the Office of the State Attorney. Could you speak up a little louder, please? I'm sorry. Is that better? And a higher act or two. Okay. The trial court here erred in refusing to instruct the jury on a lesser-included offense of criminal trespass to residence, where a reasonable juror could have found the defendant guilty of that lesser offense, but not guilty of the greater offense of which he was charged, which was residential burglary. In their brief, the State argues that contrary to your current position in your court, there can be no dispute that the defendant's sole theory of trial was mistaken identity or misidentification. Is that an accurate statement? Well, it is true that in opening statements that counsel suggested to the jury that the defendant may have not been the perpetrator. However, what the counsel also did was ask the jurors to hold the State to their obligation to prove identity as well as the other elements of the offense. In closing argument, he had a similar argument to the jury, but at that time the instruction had already been denied the instruction request for the lesser included. Well, in closing argument, didn't the defense say there's no evidence of intent to steal and also point out that other people in the home had access to the safe that had been moved and the defendant's print was not on the safe? Were those pointed out as well? Right. They were pointed out. Sure, they were pointed out as well, but it still goes to the elements of proving the defendant's identity as well as the defendant's intent. And as you mentioned, intent was discussed there as well. But not in much detail. I mean, the lack of intent for opening and closing was on the misidentification. Isn't that correct? In closing argument? Opening and closing. Correct, correct. And the trial court denied the request for the instruction based upon the misidentification, but the misidentification came from, or the fact that misidentification was not an issue, came from the Austin case, where the Austin case does not discuss that very much. It simply says that because it's not a question here that, or not an issue here, that the defendant wasn't entitled to the instruction. But in Austin they also had evidence of the defendant's intent, because unlike here, in Austin the defendant was possessing gloves in July, which would have suggested that he had an intent at the time he entered the building, which is what's significant here. Well, is it your contention that the defendant actually had to remove items from the house for there to be evidence of his intent to commit a theft? No, not at all. So, circumstantially, the fact that he was found in the bedroom, or surprised in the bedroom while he was going through the owner's possessions, that's circumstantial evidence of intent, is it not? Absolutely. And if this were a reasonable doubt case, we probably would not make an argument that he should have been given a lesser-included instruction. Had he been given that lesser-included instruction, the jury probably could come to that conclusion based on the inferences. But the problem is the jury here did not have all of the tools necessary, because they didn't have the option to determine that he did not have the intent at the time he entered the building. The police, in questioning the defendant, raised the possibility of a trespass charge as opposed to burglary, correct? Someone did, correct. The record is a little unclear as to how that was actually brought up. In fact, the jurors were concerned about that, too, and asked for a copy of the transcripts. In reviewing it again, it looks like perhaps the defendant asked that question, but it's very, very unclear. There were two officers present at the time in the testimony, but one doesn't address it at all. The other was rather shaky as to how the topic came up. The trial court was not, when the trial court ruled on the request for instructions, the McDonald case had not come down yet, correct? The McDonald case, the Supreme Court said some evidence, not some credible evidence. If there's some evidence, and here the trial court said there's very, I think there's a typo, but it's a very slight evidence that would warrant the instruction. But because the defense was misidentification, I'm not giving the instruction. Correct. Excuse me. That isn't what the record reflects, is it, counsel? I think it's the fact that there's boilerplate. The trial court was talking about boilerplate rather than reflecting. I believe the record reflects, as I've read it, the court finds that very light evidence supporting the defendant's theory would justify giving an instruction of a lesser-included offense, talking about boilerplate, as I read this. Then it goes on to say the court finds that the defense has, as outlined by the evidence in this case, is misidentification. I believe there should be a sit in there. And that was argued at the motion for direct averdict, and the court therefore finds that to give the lesser-included offense in this case would be inappropriate and will refuse the lesser-included. In the current case, in green, the trial judge here. Yes, this is what this record reflects, what I just read. Right, and I think the misidentification language, though, comes from us, and that was a case that was cited by, I believe, one of the parties, and that was a case that the trial court relied on. And misidentification wasn't an issue there. It wasn't an issue there because there actually was evidence to support the defendant's intent or state of mind at the time he entered the building, and that's what we don't have here. We certainly have some circumstantial evidence possibly of the defendant's intent at some point. Right. Well, how would we look at what his intent was in entering a building where he had no reason to be? I mean, if it wasn't a museum, there wasn't an emergency, he just walks into a house into somebody's bedroom and starts looking. I mean, he's just bruising. We have to use common sense in looking at the evidence in each of these cases, do we not? We do. Again, we're not talking about the ultimate decision. If this were a reasonable doubt case, and I would not be up here arguing that that was not evidence that a jury could make a reasonable inference from. I think it's still somewhat questionable regarding his intent at the time, but that would be within the purview of the jury. The problem here is the jury wasn't properly instructed with that other option. But our review is abuse of discretion, is it not? This is an abuse of discretion case. We reviewed the trial court's decision on abuse of discretion. And even on an abuse of discretion decision or standard, it's still an abuse of the trial judge's discretion because ultimately the trial judge is required to give the instruction if there's evidence that would permit a rational jury to convict of the lesser offense and acquit of the greater offense. But he found there was not. Well, right, the judge found that there was not. But I think the judge was also incorrectly regarding slight evidence or any evidence as being affirmative evidence of the defendant's lack of intent. I don't think the defendant is required to prove that. Otherwise, if you were required to prove that, you're going to have a situation where you're going to require the defendant to testify. But you can still get evidence of the defendant's intent at the time he entered the building. In Austin, this court made very clear that in both opening and closing arguments, the only defense was misidentification, correct? Correct. And here, in closing argument, the defense counsel challenged the state's evidence and said there's no evidence of intent. Correct. And in Austin, there was stronger, at least some evidence of intent, which we could not, the trial counsel here could not make that evidence. But you could have a defendant with burglary tools in his possession. You could have a defendant with proceeds, which you didn't have here. You could have a defendant with, who has made statements to either a co-conspirator, a cellmate. We have that all the time. There would be evidence of the defendant's intent at the time he entered. I'm sorry. Again, we're not challenging the ultimate conviction. We're just saying that there was enough evidence there for a rational jury to have concluded that the defendant did not possess the state of mind or the intent to commit a theft at the time he entered the premises. So we're saying that a trial court has to give a lesser-included instruction any time somebody enters a building without burglary tools and without gloves. Perhaps. Without anything in his hands. And so somebody cannot just walk into a house with the intent to steal. And if that's the case, the court, we're saying, I mean, the logical extension is the court has to give a lesser-included any time somebody doesn't have burglary tools and doesn't wear gloves when they walk into a house without permission with the secret intent, let's say, or the intent that they haven't verbalized yet to anybody. Well, it is still the state's burden, but prove that intent. Right. And so prove it, do you not, by looking at what happens after the person walks into the house? By what they're doing in the house. No, because you don't know when he formulated that intent. But there's also evidence he was going around in different houses. He could just be, and we've had cases like this as well that were mentioned in Austin, where people are just, or a person, a defendant, is walking into homes, and then he says, oh, hey, that's something nice, I'm going to take that. That technically under the statute would not be burglary. And we're not saying that a jury couldn't make the inference from that evidence ultimately to convict. We're saying that because the jury could find that he didn't have that intent at the time he entered the house, and it is still the state's burden to prove that element. And in many cases, I think you'll find there is some proof. Some cases, you know, I've had where it's, well, I understand the person has a safe in their house, let's go get it, and he's got money, he's got his check. You're going to have some element there or some evidence there that the state would be able to use that would defeat the giving of that instruction. And I think in those cases, certainly that would not be appropriate to give an instruction. And there would be cases where you would not give the instruction because otherwise the evidence, the slight evidence, some evidence standard would be rendered. And so what is the slight evidence here that you say would have justified the trial court in giving this? The slight evidence here is actually. What is the slight evidence? It's the state's lack of evidence regarding his intent at the time he entered the home. It's not an affirmative. So the slight evidence is the state's lack of evidence. Correct, because it is the state's burden. Well, your point is the defendant doesn't have to offer evidence in order to challenge the sufficiency of the evidence on any element, correct? Correct. The state always has a burden proving to be on a reasonable doubt. And the state or the defense could request a lesser included or the court could give an instruction sua sponte. Correct. Correct. All we're seeking here is the instruction. We're not ultimately challenging the conviction because possibly the conviction could be upheld. But the problem is here that it's required that there be an instruction any time that it's possible for the defendant to have been convicted of the lesser offense but acquitted of the greater. And apparently in this case, because you had some juror concern, this would be one of those times because there wasn't evidence about his intent at the time. So you're saying we look at something that's not that we look at the question the jury had and that's how we decide whether the trial court or not abused his discretion? No, but it is indicative that in this case the jury did have that question. So, you know, to say that there's no way that a rational jury could have come to the conclusion that the person, I mean, you wouldn't use that obviously as, you know, as support because it didn't come until later. But it does certainly reflect that, in fact, the jury actually did have these concerns. Well, it might have been because it was the discussion of criminal trespass versus residential burglary was unclear in the record, as you alluded to today. Absolutely. And it's not clear at all how it came up. It absolutely might have been. So it had nothing to do with really what the specific evidence was. Correct. With what happened in that house. Absolutely. And that's why they need the instruction because we don't know what their intent was, the juror's intent at that time, or why they wanted this. I mean, they may have said, you know, they may have gotten the instruction and still unanimously come to the conclusion that the defendant was guilty of residential burglary. But what we have is a possibility that it does. It looks like certainly that it's very possible that all of the jurors here agree that the defendant was guilty of residential burglary. Some of those jurors, maybe even one of those jurors, might have been concerned about what it is guilty of, perhaps like trespass, guilty of residential burglary. Well, we're only speculating, counsel. That's my point. Right. That's my point. And that's why the instruction was necessary because we don't know the juror's intent. And you can't have confidence in the jury verdict until the jury has been properly informed. And that's the bigger question here is when the instruction must be given in order to preserve the integrity of the jury decision. And that's the issue here rather than reasonable doubt. Right. Well, I guess I'd like to go back one more time, if you don't mind, to what the slight evidence was that the trial court should have looked at. So you were saying that the slight evidence was the state's lack of evidence of intent. On the issue of intent. The defendant does not have to offer evidence to prove intent. For example. So did not the trial court find that there was no evidence when it, lack of intent? Right. But that's an affirmative. That's, I believe, where the trial court erred. Say the defendant in this case had not, there was not evidence of the safe having been moved or the dresser drawers being opened when the two girls walked in on him. A reasonable person could probably still come to the conclusion at that point that, as you say, you shouldn't be in someone else's house in the middle of the day unless you're going to commit a burglary. That's what you're doing. But there would, in that case, be no evidence that that was his intent. And the defendant in a situation like that certainly wouldn't be required to offer evidence. How do you say that's no evidence? Don't we have to use our common sense? It's an evidence of a trespass. It's not an evidence of a burglary. In the situation I just gave, there's no evidence of a burglary. The Supreme Court said in McDonald, it is not the province of the trial court to weigh the evidence for the decedent when deciding whether a jury instruction is justified. Correct? Correct. And here, by the terminology the court used, the court was weighing the evidence. There was slight evidence. Correct. Excuse me. I'm sorry. I didn't hear what you said. The trial court used the term light evidence or slight evidence in denying the instruction, correct? Correct. But indicating there was no light or slight evidence. In other words, I guess we... Well, the record speaks for itself. I was about to say the same thing. The record goes right into our record today, so it says what it says. Any other questions with this? No. Thank you. You will have an opportunity to make rebuttal. Thank you. Mr. Linden. Thank you, Your Honors. Nick, please, the court. Counsel. Richard Linden on behalf of the people. Your Honors, I'm sorry, Justice Burkett, but I have to disagree. I think the record is clear that the trial judge was saying that the standard is that there must be slight evidence. I do not believe that the record could be read that he was saying there was light. Point the transcript out. What page of the record are you referring to? Because I read it differently. It's on page 385. Well, right. Three zeros, four zeros, and then at the bottom it was 385. The top right says also 101. I mean, obviously, I mean, I don't mean to be disrespectful in suggesting that. Let me. The court finds very light evidence supporting the defense theory would justify giving an instruction of the lesser included offense. The court finds the defense has, as outlined by the evidence in this case, is a misidentification, and that was argued at the motion for directed verdict. And the court, therefore, finds that to give a lesser included offense in this case would be inappropriate and would refuse a lesser included. I think the it wasn't again, it was spoken as opposed to written, but I don't think that's anything more or less than he's saying. The court finds that he didn't specifically say the standard is, but he's saying slight or light evidence would be sufficient. And there was nothing here. And indeed, that's bolstered by the fact that there. He followed Austin, right? Correct. And Austin followed Moore, correct? Correct. Have you read Moore? I have not. Do you know what the facts of Moore were? I don't. The defendants were seen carrying a refrigerator out of the home and there were other items missing. And the court in Austin used Moore. But the court in Austin pointed out the only defense argued in opening statement and closing argument was misidentification. Is that the case here? Because you say in your brief, contrary to the defendant's current position, there can be no dispute that the defendant's sole theory of trial is misidentification, a mistaken identity, or misidentification. Is that the case? I believe so. And just give me a moment to explain. It wasn't just opening statement, which that was all. It wasn't just closing argument. It was also in his motion for directed verdict. He did not argue lack of intent in his motion for directed verdict. Are you talking about the record? Yes. No, no. I'm suggesting that. The defendant did argue that the state had not proven intent to steal. So in essence, then, what we're saying is that in any case where the state cannot demonstrate intent, i.e., by a discussion ahead of time, let's go commit a burglary, let's go commit a retail theft, as opposed to they take something and then they argue later without any evidence, that how do we know it wasn't shoplifting? That in any case where all we have to do is have the defense attorney skillfully, without any evidence whatsoever, basically say, oh, by the way, they also didn't prove intent. Well, the case law also clearly says that, one, you can prove intent just by the fact of entering. Let me rephrase that. You can infer intent just by the fact of entering. But in addition, you look at other factors. Right. And in this case, unlike, and actually the defense cites the dissent of Justice Dunn in Austin for the proposition that we should listen to, arguably listen to the dissent. However, in Austin, Justice Dunn said, wait a second, part of the reason why we don't have the extra inference is because the defendant was found in Austin just standing over the woman. So maybe we have some intent of. . . On a hot July night with love time. He was saying that regardless of the gloves, he wasn't rummaging through the house. Well, in this case, we have the exact opposite. So we don't have gloves, but we have the fact that he enters actually during the day, which realistically, I mean, it's kind of counterintuitive to a lot of crime. But burglary is probably better during the day because a hot July night is more likely that someone's home. Ten o'clock in the morning is potentially more likely that no one might be home. You might infer as a defendant that people are at school or work. But here specifically, the witness said he was not only rummaging through material, he had taken a safe off the ground and put it on the bed. Well, that point was also challenged by the defense because the defense argued that the state failed to call other people in the home who could have moved the safe. Correct? The defense argued that in closing argument. And they pointed out during the course of the cross-examination of the state's witnesses that there were other people in the home. And the only print that was identified on the safe was from one of the daughters, correct? Correct. Although I think the only way we're going to get into that is by saying that that we're elevating in essence. You're arguing that the state, the jury could only conclude that the defendant's intent was theft. That's your argument. Now, my argument is not the only. What I'm saying is we're almost elevating a reasonable hypothesis of innocence. There is no evidence whatsoever. Argument is not evidence. Does the defendant have to present evidence to be entitled to a lesser included instruction? Isn't that burden shifting? It's not burden shifting if the court says you have to have slight evidence. You have to have some evidence. Evidence can't be argument. So you can't just say, well, the attorney skillfully argues intent as well. I don't think Austin stands for the proposition that the only way you don't have to present a lesser included in a residential burglary is if you only argue misidentification. I think that is part of the principle. But the more important principle is you have to show that there's slight evidence. Argument cannot and does not equate to evidence. If then the contrary question is supposed to be confined to the evidence and reasonable inferences to be drawn from the evidence. So a defendant's attorney can get up and argue to a jury the state has not proven intent to steal because nothing was taken. The defendant was over the desk, over the dresser where valuable, according to the testimony, valuable items were located. And he took nothing. Nothing was taken. That's an inference that could be drawn that his intent must have been different than the intent to steal. What is harmful about giving the lesser included in that circumstance? Why would the state say don't give it here because it would just muck things up? That's what the state argued. Because I don't think that's the standard, Your Honor. I don't think the standard is. The standard isn't whether it's harmful or not. It's based on the evidence. The standard can't ever be what's the harm. What's the harm of giving the instruction? What's the harm? That's not the point. The point is this. If the evidence would permit a jury to return a verdict of guilty on the lesser included but the jury but not guilty on the greater offense, the defendant's entitled to the instruction. And where the evidence of intent to steal is purely circumstantial, there's no direct evidence of intent to steal, why can't the defense argue for the instruction? The defense can argue. But the fact is that I think if we would follow that logic, we would then have to come to this court would have to make a ruling that in every single case where a defendant is potentially disturbed by, you know, someone yelling or in a case of possible retail theft where they grab him, you know, because he's looking surreptitious and they grab him before he steals, that in every case you must give a lesser included offense as long as the defense attorney is smart enough to argue that, well, if he didn't actually put it in his pocket, if he had picked it up and is looking like, you know, and then he sees somebody and puts it down, that he didn't actually take it, that that is. Could we have that cup dusted for Prince? I want to find out if you touched it, because if you did, then I think you've proven your case. Well, and if I did, and obviously it might not have Prince. I mean, I know it's all what he wants. Of course. What you just went through is an analogy where you look at the evidence and say, can or could someone infer it? And that's the point that the Supreme Court made in McDonald. They said it's there's no way to be done. If the defendant requests the instruction and the evidence would permit a rational jury to find the defendant guilty of the lesser but not guilty of the greater offense, he's entitled to the instruction. If there is slight evidence, I don't believe they said absent evidence. Some evidence. I don't think that, again, argument is not evidence. What we're basically doing is we're arguing the evidence. We're talking about what the evidence was and what the evidence was not. I think the inferences that were made in this case and the inference that would have to be made in every case would almost equate to a reasonable hypothesis of innocence. If, for example, we had defendant was drunk and wandered in and there's evidence that all the buildings looked alike or it was an emergency where he was injured or someone is injured on the street or, you know, again, some. And I'm not suggesting that he needs to testify at trial. But if he made that statement to the police, if there's something there that very well could be sufficient to give the argument. I still don't think he'd be successful at trial, even with the instruction, but that would be sufficient to give. Here, if all you have is saying you didn't prove intent, all the evidence seems to be pretty strong towards intent. If you look at the cases that say here's what we need to show intent. The fact is we rarely have intent crimes unless we have a conspiracy, unless we have co-defendants where someone is saying, I'm going to go do this. You only can't demonstrate or prove intent. You said in response to Justice Burkett's statement that there were things on the dresser that were valuable that weren't taken, that could have easily been taken. And your response, in my opinion, presumed that only money is valuables or, quote, unquote, constitutes something that a burglar would want to steal. Let me finish the syllogism, so to speak, because I'd like you to clarify why, after I'm done, why, if there are things that are in the common and everyday experience of life, things which a burglar might wish to take as some form of valuable that they could trade or barter for something else of value, my understanding of common everyday experience in life is that money is just one of several items that a burglar would steal. And so why are we supposed to presume that, maybe I misunderstood you, but that seemed to be what you were saying was there was no money on the dresser, and therefore there was no evidence of whether or not he was negatively thinking about taking something. I definitely know for sure I did not use the term money. If I used the term valuable, I'm not sure I did. But if I did, I didn't intend it to be money, jewelry. I should have just said items. And if I did say valuables, I meant nothing more or less than personal items or items in the house. So I definitely did not say money. I did not intend. Like I said, if I did, it was a misstatement. I did not use the term. I don't think you used the term, but the logic of your argument in my mind was that the failure to take anything off the dresser was not lack of intent or was not evidence of lack of intent, because what was on the dresser wasn't what the person wanted. And then maybe I extrapolated and said, well, when we determine intent based upon circumstantial evidence, we should be talking about what a reasonable person or a reasonable burglar might want to take if something was on a dresser or some other flat surface that's easily accessible. And that would suggest to me that if money is a universal tender, then the only thing that would, in my mind, turn the light on is that there was no money on the dresser. Therefore, you can't assume that the failure to take anything off the dresser was necessarily a lack of intent to steal. That is certainly not what I intended. I don't think it's what I implied. In this case, what I basically said was the fact that any burglar doesn't take something doesn't necessarily, sorry, any defendant doesn't necessarily take something, especially when he is startled. So we don't know what would have happened if he was caught absent the daughter coming in and screaming. The fact that he screamed and ran out is the inference. So I don't care if it was a hairbrush. If he grabbed anything, that's burglary. It doesn't have to be jewelry. It doesn't have to be an item of what dictionary definition of value. Do you remember the Sherlock Holmes novel short story about the dog that didn't bark? I do not. I do have the complete works on my phone. I believe it is. I don't. It was something like the Blaze Star or something like that. It was a story about a thoroughbred on a horse farm. And I don't recall if the horse was stolen, killed, injured or what, but there was a dog on premises that didn't bark. And Sherlock figured out that the perpetrator of this crime was someone that the dog knew and liked, because if it wasn't someone that the dog knew and liked, it would have barked. And so to me it's somewhat of an analogy to the extent that is the fact that the dog didn't bark, is that no evidence or is that evidence of a negative fact such that it constitutes evidence? And so what I've been listening to this morning is this conundrum or enigma or interesting debate about just what is a negative fact or negative evidence or lack of evidence, whose burden of evidence is it, and so on. And in this instance, I didn't hear barking dog in the sense that, as the facts in other cases have pointed out, they were wearing gloves, no high heels. The person or persons were caught carrying a refrigerator. I don't know if it was operative, but they obviously didn't argue lack of intent. So there was indicia of some intent, not necessarily. Maybe when they first went in, they weren't looking for a refrigerator. They were looking for an electric grill, but the point is that it's beside the point. So your argument strikes me as being addressed at, at least to the extent that you are suggesting in the future, this will always have to be done. And my question to you is, if the evidence is lacking, either because there is no affirmative evidence or whatever affirmative evidence there is, is of a negative nature, why shouldn't there be an instruction for a lesser included? Doyle's brilliance aside. I'm sorry, what? Doyle's brilliance, Conan Doyle's brilliance aside, it's a story. It's not the law, and we have specific legal concepts here. The legal concept here is you can infer, even from the entry, without. But we do have, I would say, in your analogy, we have the barking dog. The barking dog is the contrary of Justice Dunn's dissent, which says just the simple rummaging through the items. He wasn't just going in to sleep. He wasn't going in because he was drunk. He was going in looking through something. The fact that he was interrupted by the scream is more than just a negative inference. It's more than negative evidence. It's the fact that rummaging through is a positive evidence. It's strong circumstantial evidence of intent. Definitely. Right. Of course it is. But the defense argued, and I'll just point out a couple of the points that the defense raised. Do you have evidence that this man moved the safe? Where is it? A&G. Did you hear from A&G? Again, there's nothing missing other than the safe being moved. Nothing else is touched. Did you hear any evidence about that? And then the argument is there's no clear proof of intent to steal. No intent to steal that day, I think, was the quote. We don't have evidence from every possible person. No direct evidence. Well, we do have direct evidence from the father who said, I left it in the corner. So does that mean that the sister couldn't have moved it? That's circumstantial. Oh, of course it's circumstantial. But that's what we look at. Is there significant circumstantial evidence? And again, the fact is, could we always give a lesser included if we don't have specific proof of intent? Again, we don't have testimony from somebody saying, he told me he's going to go on a burglary spree. Or he knows that this family has a safe. What the Supreme Court said in McDonald is that trial courts don't go through that weighing. The trial courts do not go and look at what is believable, what's not credible. If there's any evidence that would justify a jury in rendering a verdict of not guilty on the greater offense but guilty of the lesser offense, the defendant gets the instruction. I fail to understand. We'll have to agree to disagree on what any evidence is. I do not believe that negative evidence. That's burden-shifting. Excuse me, I would ask that he be permitted to finish his statement. I was curious to know what the rest of the sentence is, please. The rest of the sentence is that negative evidence does not rise to the level of evidence. Even though you can infer facts, you can't say because a skillful defense attorney can say, aha, the people didn't prove intent. Therefore, just any time I argue lack of intent, that will happen not just here but in any case where a burglar doesn't take something or doesn't have gloves. So every case, same thing with retail theft. Any time where we cannot prove that something was actually taken out of the house, a skillful attorney seeing a decision that would read that way would say people didn't prove intent. Therefore, it is mandated that a lesser included is given. And again, argument as skillful as it is does not equate to evidence. And I don't believe that negative evidence. Sure, you can argue and the jury might find, well, as a result, it's not residential burglary because he didn't take anything. But I don't think that's sufficient to give an instruction on trespass when we have a lot more. Thank you, sir. Thank you. And you've answered everything we've asked. Thank you. So there's nothing really further for you to say. Mr. White, you have an opportunity. I just rather briefly want to point out the State argues that argument is not evidence, and that's certainly true. But argument does point out the deficiency in the State's evidence. It is still the State's burden to prove the defendant's intent at the time he entered. If the State cannot prove that, the State perhaps should not charge the offense of burglary. It is clearly a trespass in this situation. Whether it's a burglary is another question. And I think the situation, such as your out-of-the-basket bills reference, is you can't use that kind of negative inference here because we're not dealing with the ultimate question of guilt. As the State points out, we're raising this to a reasonable hypothesis of innocence. We don't know what would have happened had the defendant not been interrupted. You look at other factors in order to infer the intent. When challenging the guilty verdict in the judgment, that's absolutely true. But that's not what we're doing now. All we're saying now is the defendant should be provided, or the jury rather, should be given the opportunity to consider the fact that the State did not prove the element of entering with the intent at the time he entered the residence. He may have formulated that intent later based upon this and the circumstantial evidence, as Justice Burkett pointed out. But you're using the circumstantial evidence at the point he was interrupted as further circumstantial evidence that he had that intent at the time he entered. And it may be, as the State points out, that you've got to give these instructions more frequently. But that's also what the Constitution requires. McDonald, Austin, Sajak, all of these are progenies of the constitutional right that a jury needs to be fully informed regarding the law and their options. And that's where these come from, is to the point at which the jury must be informed. And here, if the jury can reach that logically without, say, saying he did go in and he committed a trespass, which he clearly did, or someone did, certainly, that that raises to the level of intent at the time he entered. Because the State says, you know, maybe you're more likely to go in during the daytime. Well, that too is just sort of guessing what they do. In fact, I believe a common law inverter is actually a nighttime offense. So that even changed a little bit. So, you know, I don't think the State meant that when a common law invertery at night was considered a felony. I don't. Well, as it is now. A residence invertery during the day is considered a felony. But I think that's the distinction that I read a long time ago. Which is what we have, is a felony here. But, right, I mean, for the State to come up and say, you know, that there's some circumstantial evidence to suggest that the defendant may have had an intent at some point to commit a burglary while bearing the burden. And then saying, therefore, you must conclude that he must have had that intent at the time he entered the premises. And all the instruction does is allow the jury the opportunity, cover the lines, allow the jury the opportunity to say, if there's a juror in that group that says, I don't believe the State's story. I don't believe that that particular standard was met. That they can come back with a lesser offense. And I think the Constitution requires that. And I think the Court erred in this case when it did not provide that instruction. I don't have any other questions. No? Thank you. Thank you. The case will be taken under advisement. We'll take a short recess.